UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------

CURTIS BAKER,

        Plaintiff,        Case No. 1:13-cv-1090

v.        Honorable Paul L. Maloney

C. STODDARD et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against any of the Defendants.

**Discussion**

I.      Factual allegations

Plaintiff presently is incarcerated at the Lakeland Correctional Facility. In 2006, Plaintiff was sentenced to life in prison after a jury convicted him of first-degree criminal sexual conduct (person under 13), MICH. COMP. LAWS § 750.520b(1)(a). Plaintiff was sentenced as a subsequent felony offender, MICH. COMP. LAWS § 769.11, having previously been convicted of unarmed robbery, MICH. COMP. LAWS § 750.530, and assault with intent to commit criminal sexual conduct, MICH. COMP. LAWS § 750.520g(1).

The events that Plaintiff complains about occurred at the Richard A. Handlon Correctional Facility (MTU). Plaintiff sues the following Defendants: MTU Assistant Warden C. Stoddard; MTU Administrative Assistant John Payne; MTU Grievance Coordinator C. Heffelbower; MTU Deputy S. Young; and Michigan Department of Corrections (MDOC) Grievance Specialist K. Curt.[1]

Plaintiff alleges that Defendants violated his First, Eighth and Fourteenth Amendment rights by denying his brother, Freddie Baker, Jr.'s request to visit Plaintiff in prison. Plaintiff states that his brother Freddie is currently on parole following a conviction for criminal sexual conduct. Freddie submitted a visitor application to MTU after receiving permission to visit from his parole officer. Defendants Payne and Stoddard denied Freddie's request to visit, but he was informed he

---

[1]Plaintiff purports to bring this action on behalf of himself and his brother. Plaintiff is not a licensed attorney. Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "in all courts of the United States, the parties may plead and conduct *their own cases* personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). The statute clearly makes no provision for a *pro se* party to represent others. The federal courts have long held that section 1654 preserves a party's right to proceed *pro se*, but only with respect to her own claims. Only a licensed attorney may represent other persons. *See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969). Thus, Plaintiff can not sue to vindicate his brother's constitutional rights.

could reapply after he was discharged from parole. Plaintiff filed a grievance objecting to the denial of Freddie's request to visit. Plaintiff appealed the denial through Step III. The denial of visitation was upheld at each step.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Although not expressly set forth in his complaint, Plaintiff challenges Michigan Administrative Code Rule 791.6609(7) which sets forth the rule regarding visitation by a parolee. Rule 791.6609(7) states, in pertinent part,

> a parolee shall not be allowed to visit with a prisoner unless the person is on the prisoner's approved visitors list and all of the following criteria are met:
>
> (a) The person is an immediate family member of the prisoner.
>
> * * *
>
> (c) In the case of a probationer or parolee, prior approval for the visit is obtained from the warden of the institution and the supervising field agent.[2]

In *Overton v. Bazzetta*, 539 U.S. 126 (2003), the Supreme Court examined Rule 791.6609(7), along with other MDOC regulations, and determined that Rule 791.6609(7)

---

[2]Michigan Department of Corrections (MDOC) Policy Directive (PD) 05.03.140 essentially mirrors Rule 791.6609(7). It provides:

> A proposed visitor shall be approved for placement on the prisoner's approved visitors list if all of the following criteria are met:
>
> * * *
>
> 3. The proposed visitor is not on parole or probation in any jurisdiction as a result of a felony conviction. However, a parolee or probationer who is an immediate family member may be placed on the prisoner's approved visitors list with prior approval of the Warden of the facility where the visit will occur and written approval of the supervising field agent.

passed constitutional muster because it was "rationally related to legitimate penological interests." *Id.* at 132 (holding that "the challenged regulations bear a rational relation to legitimate penological interests," and "[t]his suffices to sustain the regulation in question.")

In *Overton,* state prisoners and their prospective visitors brought a class action under § 1983 alleging that restrictions on prison visitation violated their rights under the First, Eighth and Fourteenth Amendments. *Id.* at 130. The Court examined whether the MDOC regulations governing prisoner visitation, including the one at issue in the instant case, violated the First Amendment right to freedom of association. The Court used the four factor test set forth in *Turner v. Safley*, 482 U.S. 78 (1987) which requires analysis of:

> whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation.

*Id.* at 89-91.

Discussing the first *Turner* factor with respect to visitation by former inmates, the Court stated:

> MDOC's regulation prohibiting visitation by former inmates bears a self-evident connection to the State's interest in maintaining prison security and preventing future crimes. We have recognized that 'communication with other felons is a potential spur to criminal behavior.'

*Overton*, 539 U.S. at 133-34 (quoting *Turner*, 482 U.S. at 91-92).

With respect to the second *Turner* factor, the Court explained that

> Were it shown that no alternative means of communication existed, though it would not be conclusive, it would be some evidence that the regulations were unreasonable. That showing, however, cannot be made. Respondents [the prisoner and their prospective visitors] . . . do have alternative means of associating with those prohibited from visiting. . . . [I]nmates can communicate with those who may not visit by sending messages through

5

> those who are allowed to visit. . . . [I]nmates may communicate with persons outside the prison by letter and telephone. Respondents protest that letter writing is inadequate for illiterate inmates and for communications with young children. They say, too, that phone calls are brief and expensive, so that these alternatives are not sufficient. Alternatives to visitation need not be ideal, however; they need only be available.

*Id.* at 135 (internal citation omitted).

With respect to the third *Turner* factor concerning the impact on guards, inmates, prison resources, and other visitors, the Court stated that

> [a]ccommodating respondents' demands would cause a significant reallocation of the prison system's financial resources and would impair the ability of corrections officers to protect all who are inside a prison's walls. When such consequences are present, we are 'particularly deferential' to prison administrators' regulatory judgments.

*Id.* (citing *Turner,* 482 U.S. at 90.)

Finally, the Court considered the fourth *Turner* factor regarding ready alternatives and determined that

> *Turner* does not impose a least-restrictive-alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal. . . . As to the limitation on visitation by former inmates, respondents argue the restriction could be time limited, but we defer to MDOC's judgment that a longer restriction better serves its interest in preventing the criminal activity that can result from these interactions.

*Id*. at 136 (internal citation omitted).

The Court concluded by considering whether the MDOC's visitation regulations violated the Eighth Amendment prohibition against cruel and unusual punishment, *see e.g., Estelle v. Gamble,* 429 U.S. 97 (1976)*; Rhodes v. Chapman,* 452 U.S. 337(1981), or the Fourteenth Amendment's prohibition against deprivations of life, liberty or property, without due process of law, *see e.g., Sandin v. Conner*, 515 U.S. 472 (1995). The Court found that the regulations were

entirely consistent with the requirements of both Amendments, stating:

> Michigan, like many other States, uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline. This is not a dramatic departure from accepted standards for conditions of confinement. Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur.

*Overton*, 539 U.S. at 137. *See also Bazzetta v. McGinnis*, 430 F.3d 795, 802-03 (6th Cir. 2005) (concluding that by citing *Sandin* and stating that the regulations were not a dramatic departure from accepted standards for conditions of confinement, the Supreme Court implicitly ruled in *Overton* that MDOC visitation regulations did not violate the Fourteenth Amendment).

Plaintiff does not allege any facts to suggest that "different considerations" require this Court to depart from the Supreme Court's holding in *Overton*. *See Overton*, 539 U.S. at 137 (explaining that "if the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations.") Here, Plaintiff alleges only that his brother Freddie's request to visit was denied until Freddie's parole is terminated. Although this could amount to a lengthy limitation, Plaintiff's allegations do not suggest that Freddie was permanently denied visitation. Additionally, as the *Overton* Court explained when discussing the length of the limitation on visits by former prisoners, "we defer to MDOC's judgment that a longer restriction better serves its interest in preventing the criminal activity that can result from these interactions." *Id.* at 136. Moreover, Plaintiff does not suggest that Freddie's visitation request was denied arbitrarily or that Freddie is the only parolee denied the right to visit an incarcerated family member. Consequently, because the visitation restriction as applied to Plaintiff's brother does not violate Plaintiff's First, Eighth or Fourteenth Amendment rights, Plaintiff fails to state a claim against any Defendant.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  October 30, 2013  /s/ Paul L. Maloney
Paul L. Maloney
Chief United States District Judge